**KOLLER LAW LLC**
David M. Koller, Esquire (90119)
Jordan D. Santo, Esquire (320573)                    *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARIBEL GONZALEZ-GRAHAM,** | : | |
| **95 Club House Drive** | : | **Civil Action No.** |
| **Willingboro, NJ 08046** | : | |
| **Plaintiff,** | : | |
| **v.** | : | **COMPLAINT AND** |
| | : | **JURY DEMAND** |
| **THE BEHAVIORAL WELLNESS CENTER** | : | |
| **AT GIRARD,** | : | |
| **801 W Girard Avenue** | : | |
| **Philadelphia, PA 19122** | : | |
| **Defendant.** | : | |

### CIVIL ACTION

Plaintiff, Maribel Gonzalez-Graham (hereinafter "Plaintiff"), by and through her attorney,

brings this civil matter against Defendant, The Behavioral Wellness Center at Girard (hereinafter,

"Defendant"), alleging she was subject to unlawful violations of Title VII of the Civil Rights Act

of 1964, as amended ("Title VII"), the Pennsylvania Human Relations Act ("PHRA"), the

Philadelphia Fair Practices Ordinance ("PFPO"), and the Equal Pay Act ("EPA"), and avers and

alleges as follows:

### THE PARTIES

1. Plaintiff is an adult individual domiciled in the above captioned address.

2. Defendant is a provider of psychiatric and substance abuse counseling and treatment with a location and corporate headquarters located at 801 W Girard Avenue, Philadelphia, PA 19122.

3. At all relevant times hereto, Defendant employed the requisite number of employees under the applicable statutes and was a covered entity.

4. At all times hereto, Defendant employed managers, supervisors, agents and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decision, these individuals engaged in the practice of treatment which forms the basis of Plaintiff allegations in the instant Complaint.

5. At all times relevant hereto, Defendant employed managers, supervisors, agents and employees who acted directly or indirectly in the interest of the employer. In so acting these individuals engaged in the pattern and practice of treatment which forms the basis of the Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

6. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

7. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

8. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

9. The Court may also maintain supplemental jurisdiction over state law claims set forth herein

pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

10. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in the judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

12. Plaintiff exhausted her administrative remedies under Title VII, the PHRA, the PFPO and the EPA.

13. Plaintiff filed a timely written Charge of Discrimination (the "Charge") with the Equal Employment Opportunity Commission ("EEOC"), signed August 20, 2025, alleging race and sex discrimination, disparate pay and retaliation against Defendant.

14. The Charge was assigned a Charge Number of 530-2025-09443 and Plaintiff requested the charge be dual filed with the Philadelphia Commission on Human Relations ("PCHR").

15. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") and that Notice is dated February 4, 2026. Plaintiff received the notice by electronic mail.

16. Prior to the filing of this action, Plaintiff notified the EEOC of her intent to proceed with a lawsuit in federal court.

17. Plaintiff files the instant Complaint within ninety (90) days of her receipt of her Right to Sue in this matter, as it relates to her federal law claims, and within two (2) years of the issuance of the Right to Sue in this matter as it relates to her PHRA and PFPO claims.

18. Plaintiff has exhausted her administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

## PLAINTIFF'S EMPLOYMENT HISTORY

19. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

20. Plaintiff is a Hispanic female.

21. On or about December 13, 2010, Defendant hired Plaintiff in the position of Counselor.

22. Plaintiff was well qualified for her position and performed well.

23. On September 16, 2018, Defendant promoted Plaintiff to the position of Program Director and Clinical Supervisor of the Intensive Outpatient CAP Program and the CAP Mobile Unit.

24. Plaintiff was well qualified for her position and performed well.

25. On September 13, 2020, Plaintiff took on the additional responsibilities as the Clinical Supervisor for two (2) residential programs, TDLR and WHOW.

26. Plaintiff held the position of Program Director and Clinical Supervisor IOP/CAP Program.

27. Plaintiff was well qualified for her position and performed well.

28. On January 1, 2023, Defendant promoted Plaintiff to the position of Assistant Vice President of Behavioral Health.

29. Plaintiff was well qualified for her position and performed well.

## PLAINTIFF WAS PAID SIGNIFICANTLY LESS THAN HER BLACK MALE COWORKER

30. In December 2022, Plaintiff learned that her salary was determined to be lower than expected and significantly less than that of Ronald Pope (Black, male), Director of Residential Services.

## DEFENDANT PROMOTED PLAINTIFF, BUT CONTINUED TO PAY HER LESS THAN POPE

31. On January 1, 2023, Defendant promoted Plaintiff to the position of Assistant Vice President of Behavioral Health and received a pay increase of approximately 26%.

32. However, Plaintiff was still paid less than Pope even after her promotion and pay increase.

33. In addition, Defendant did not give Plaintiff a job description.

34. Previously, in or around December 2022, Laura Boston-Jones, Senior Vice President of Behavioral Health, informed Plaintiff that she would receive a pay increase at the fiscal new year.

## PLAINTIFF COMPLAINED ABOUT DISPARATE PAY, BUT DEFENDANT DISMISSED HER COMPLAINT

35. In June 2023, Plaintiff spoke with Marlene Douglas-Walsh (Black, female), Vice President of Behavioral Health, and Gerri Walker (Black, female), former President/CEO, about a pay increase.

36. Walker informed Plaintiff that Sharita Barnett (Black, female), Vice President of Human Resources, had conducted a market analysis on her position and was compensating her at the market rate.

37. However, Plaintiff had not been issued a job description and complained that Defendant could not have conducted an accurate market analysis of her position without one.

38. Plaintiff also complained that Aisha Neal (Black, female), recently hired Assistant Vice President of Behavioral Health, Clinical Services, was paid approximately $25,000 more than her.

39. Walker told Plaintiff that Neal was given the pay increase allegedly due to Neal's position being a revenue generating position.

## WALKER INSTRUCTED PLAINTIFF TO DRAFT A JOB DESCRIPTION FOR HER

## POSITION

40. In mid-2024, Walker instructed Plaintiff to draft her job description for her position.

41. Plaintiff followed Walker's directions and submitted her own market analysis based on her job description in July 2024.

## PLAINTIFF ALSO COMPLAINED ABOUT HER LACK OF PAY AND SUBMITTED IT WITH HER BUDGET REQUEST, BUT WALKER DID NOT RESPOND

42. Plaintiff also complained about her lack of pay increase to Walker and submitted it with her budget request.

43. However, Walker did not respond.

## DOUGLAS-WALSH ADVOCATED FOR PLAINTIFF TO RECEIVE A PAY INCREASE, BUT DEFENDANT DENIED IT

44. During this time, Douglas-Walsh repeatedly advocated for Plaintiff to receive a pay increase, and specifically stated that even non-Hispanic and/or male Directors were being paid substantially more than Plaintiff, despite her holding a higher position.

45. However, Douglas Maier (Caucasian, male), CFO, denied it, stating that they were not discussing salaries.

## PLAINTIFF PARTICIPATED IN AN INVESTIGATION INTO STAFF COMPLAINTS OF RACE DISCRIMINATION

46. In or around August 2024, Walker assigned Plaintiff to meet with staff regarding their complaints of race discrimination at Defendant.

47. The approximately ten (10) employees (Hispanic) complained to Plaintiff about being subjected to race discrimination by Black employees.

48. Wanada Milliner (Black), Director, supervised the department the employees were complaining of race discrimination.

49. Milliner reported to Xavier Bancroft (Black, male), Vice President of Operations.

## PLAINTIFF SUBMITTED THE STAFF COMPLAINTS OF RACE DISCRIMINATION TO HUMAN RESOURCES AND THE EXECUTIVE TEAM, BUT DEFENDANT DID NOT ADDRESS THE COMPLAINTS OF RACE DISCRIMINATION

50. Plaintiff submitted the complaints to Human Resources and the executive team.

51. However, Defendant did not take any action to address the complaints of race discrimination.

## PLAINTIFF SENT A LETTER TO WALKER REQUESTING A PAY INCREASE, BUT WALKER DID NOT ADDRESS HER REQUEST

52. In March 2025, Plaintiff sent a letter to Walker requesting a pay increase.

53. Walker informed Plaintiff that she would speak with Marco Giordano (Caucasian, male), CFO, and would get back to Plaintiff.

54. However, neither Walker nor Giordano responded to Plaintiff's letter.

## DEFENDANT GRANTED NEAL ANOTHER PAY INCREASE IN OR AROUND THE SAME TIME AS HER REQUEST FOR A PAY INCREASE

55. In or around the same time, Defendant granted another pay increase to Neal, who was now earning approximately $40,000 more than Plaintiff.

## PLAINTIFF WAS VITAL IN DEVELOPING DEFENDANT'S STRATEGIC PLAN

56. In the spring of 2025, Plaintiff was instrumental in developing Defendant's strategic plan.

57. The strategic plan consisted of five (5) pillars, in which Plaintiff had key leadership responsibility for three (3) pillars, including the pillar focused on Defendant becoming a "Learning Organization".

58. This assignment reflects Plaintiff's executive level responsibility at Defendant.

59. Despite this, Defendant continued to refuse to provide Plaintiff with a pay increase.

## WALKER INFORMED PLAINTIFF SHE WAS AN "IDEAL CANDIDATE" FOR

7

## ADDITIONAL DUTIES, BUT DID NOT ASSIGN THEM TO PLAINTIFF

60. In or around April 2025, Walker spoke with Plaintiff about assuming the additional duties of a Director position and stated that she was an "ideal candidate".

61. Plaintiff was agreeable to accepting the additional job duties.

62. However, the following week, Plaintiff attended an executive team meeting.

63. During the meeting, Wanda Nolasco, Vice President of Patient Services, suggested that the responsibilities be assigned to Lesley Bettis (Black, female), Executive Director of Outpatient Services.

64. Following the meeting, Douglas-Walsh spoke to Plaintiff regarding the meeting.

65. Plaintiff informed Douglas-Walsh that Walker had indicated that she would be an ideal candidate.

66. It was apparent that Defendant had made the decision to not issue these additional Director position duties to Plaintiff in conversations that neither Douglas-Walsh nor Plaintiff were privy to.

## PLAINTIFF COMPLAINED OF HER DISPARATE PAY AND THAT EVEN HER CAUCASIAN MALE SUBORDINATE WAS PAID SUBSTANTIALLY MORE THAN HER

67. In June 2025, Plaintiff sent a letter to Walker, Douglas-Walsh and Barnett, complaining about being paid less than her comparators and even her subordinate, Michael Steele (Caucasian, male), Director of Quality Improvement, Regulatory Affairs and Nursing Development.

68. Upon information and belief, Defendant paid Steele approximately $40,000 more than Plaintiff.

## WALKER INFORMED PLAINTIFF THAT SHE WAS GOING TO HAVE BANCROFT

**MAKE THE DECISION REGARDING HER PAY**

69. Walker responded that she valued Plaintiff, but that she was going to have Bancroft, incoming President/CEO, to make the decision.

70. Walker was scheduled to retire on July 8, 2025.

71. However, Walker has remained employed at Defendant as a consultant to Bancroft and has retained her full salary.

**PLAINTIFF MET WITH BARNETT AND COMPLAINED ABOUT HER PAY DISPARITY, BUT IT WAS NOT ADDRESSED**

72. Thereafter, Plaintiff met with Barnett and complained about the pay differential between Neal, Steele and herself.

73. Barnett informed Plaintiff that she understood, but did not properly address her complaint.

74. On August 18, 2025, Barnett sent Plaintiff a letter denying that Plaintiff was subjected to wage disparity.

**BANCROFT HAS NOT ADDRESSED PLAINTIFF'S COMPLAINT OR PAY INCREASE SINCE HE HAS ASSUMED THE POSITION OF CEO**

75. In addition, Bancroft has not addressed Plaintiff's complaint or pay increase since he assumed the position.

**PLAINTIFF FILED AN EEOC CHARGE OF DISCRIMINATION AGAINST DEFENDANT**

76. On August 20, 2025, Plaintiff filed a Charge of Discrimination against Defendant.

**BANCROFT DENIED DOUGLAS-WALSH'S REQUEST FOR PLAINTIFF TO SUPPORT RESIDENTIAL SERVICES DUE TO HER HAVING FILED AN EEOC CHARGE**

77. In or around February 2026, Douglas-Walsh requested several times that Plaintiff be allowed to support Residential Services.

78. However, upon information and belief, Bancroft denied Douglas-Walsh's request, specifically because of Plaintiff's EEOC Charge.

## DEFENDANT ASSIGNED PLAINTIFF ADDITIONAL JOB DUTIES, BUT HAS REFUSED TO INCREASE HER PAY

79. In or around March 2026, Plaintiff was asked to assume additional responsibilities following the elimination of a leadership position in or around July 2025.

80. These responsibilities extended beyond the scope of Plaintiff's formal role and included providing supervision to clinical staff, despite Plaintiff not holding a designated direct clinical supervisory position.

81. Despite performing these additional duties, Plaintiff did not receive any increase in compensation.

82. During this same period, organizational leadership acknowledged constraints related to compensation decisions involving Plaintiff's role, further demonstrating awareness of the discrepancy between Plaintiff's responsibilities and compensation.

83. Douglas-Walsh informed Plaintiff that she had attempted to formalize the pay increase, but Defendant refused.

## PLAINTIFF LEARNED THAT DEFENDANT WAS OFFERING A SIGNIFICANTLY HIGHER STARTING SALARY FOR THE DIRECTOR OF RESIDENTIAL SERVICES POSITION THAN HER SALARY

84. Previously, in or around June 2025, Defendant laid off Pope.

85. In or around April 2026, Plaintiff was asked to participate in the interviewing process for the Director of Residential Services position, the position Pope formerly held.

86. In or around mid-April 2026, Plaintiff attended an interview for the Director of Residential Services position, and the interviewee stated that she was aware that the starting salary for

the position was approximately $12,500 more than Plaintiff's current salary.

**DEFENDANT HAS STILL NOT ADDRESSED PLAINTIFF'S PAY DISPARITY AND SHE IS STILL BEING PAID SUBSTANTIALLY LESS THAN HER NON-HISPANIC AND/OR MALE COMPARATORS**

87. Plaintiff is still paid significantly less than her non-Hispanic and/or male comparators.

88. Defendant is discriminating against Plaintiff due to her race and/or gender, is paying her significantly less due to her race and/or gender and has retaliated against her for her complaints in violation of Title VII, the PHRA, the PFPO and the EPA.

89. Defendant's acts and/or omissions were willful or with reckless disregard to Plaintiff's federal statutory rights.

**COUNT I – RACE DISCRIMINATION**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED**

90. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

91. Plaintiff is a member of protected classes in that she is Hispanic.

92. Plaintiff was qualified to perform the job for which she was hired.

93. Plaintiff suffered adverse job actions, including, but not limited to disparate pay.

94. Similarly situated people outside of Plaintiff's protected class were treated more favorably than Plaintiff.

95. Circumstances exist related to the above cited adverse employment actions that give rise to an inference of discrimination.

96. Defendant discriminated against Plaintiff on the basis of her protected class.

97. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

98. The reasons cited by Defendant for the above cited adverse employment actions that Plaintiff suffered are pretext for discrimination.

99. Defendant's conduct was willful or performed with reckless disregard to her federal statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

**COUNT II – RACE DISCRIMINATION**
**PENNSYLVANIA HUMAN RELATIONS ACT**

100. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

101. The foregoing conduct by Defendant constitutes unlawful discrimination against Plaintiff on the basis of her protected class (Hispanic).

102. As a result of Defendant's unlawful discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

**COUNT III – RACE DISCRIMINATION**
**PHILADELPHIA FAIR PRACTICES ORDINANCE**

103. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

104. The foregoing conduct by Defendant constitutes unlawful discrimination against Plaintiff on the basis of her protected class (Hispanic).

105. As a result of Defendant's unlawful discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT IV – GENDER DISCRIMINATION
## TITLE VII OF THE CIVILE RIGHTS ACT OF 1964, AS AMENDED

106. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

107. Plaintiff is a member of protected classes in that she is female.

108. Plaintiff was qualified to perform the job.

109. Similarly situated persons outside of Plaintiff's protected classes were treated more favorably than Plaintiff.

110. Circumstances exist related to the above cited employment actions that give rise to an inference of discrimination.

111. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

112. The reasons cited by Defendant for the adverse employment actions that Plaintiff suffered are pretext for discrimination.

113. As a result of Defendant's unlawful gender discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT V – GENDER DISCRIMINATION
## PENNSYLVANIA HUMAN RELATIONS ACT

114. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

115. Plaintiff is a member of protected class in that she is female.

116. Plaintiff was qualified to perform the job.

13

117. Similarly situated persons outside of Plaintiff's protected classes were treated more favorably than Plaintiff.

118. Circumstances exist related to the above cited employment actions that give rise to an inference of discrimination.

119. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

120. The reasons cited by Defendant for the adverse employment actions that Plaintiff suffered are pretext for discrimination.

121. As a result of Defendant's unlawful gender discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

### COUNT VI – GENDER DISCRIMINATION
### PHILADELPHIA FAIR PRACTICES ORDINANCE

122. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

123. Plaintiff is a member of protected class in that she is female.

124. Plaintiff was qualified to perform the job.

125. Similarly situated persons outside of Plaintiff's protected classes were treated more favorably than Plaintiff.

126. Circumstances exist related to the above cited employment actions that give rise to an inference of discrimination.

127. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

128. The reasons cited by Defendant for the adverse employment actions that Plaintiff suffered are pretext for discrimination.

129. As a result of Defendant's unlawful gender discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

**COUNT VII – RETALIATION**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED**

130. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

131. Plaintiff made internal complaints regarding race and/or gender discrimination and participated in an investigation into complaints of race discrimination.

132. Defendant took adverse employment actions against Plaintiff, including, but not limited to, disparate pay.

133. There exists a causal connection between Plaintiff's complaints of race and/or gender discrimination and her participation in an investigation into complaints of race discrimination and the adverse employment action.

134. Defendant refused to address Plaintiff's disparate pay as a result of her complaints.

135. Defendant's acts and/or omissions were willful or with reckless disregard for her federal statutory rights.

136. As a result of Defendant's unlawful retaliation, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT VIII – RETALIATION
## PENNSYLVANIA HUMAN RELATIONS ACT

137.    Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

138.    Plaintiff made internal complaints regarding race and/or gender discrimination and participated in an investigation into complaints of race discrimination.

139.    Defendant took adverse employment actions against Plaintiff, including, but not limited to, disparate pay.

140.    There exists a causal connection between Plaintiff's complaints of race and/or gender discrimination and her participation in an investigation into complaints of race discrimination and the adverse employment action.

141.    Defendant refused to address Plaintiff's disparate pay as a result of her complaints.

142.    Defendant's acts and/or omissions were willful or with reckless disregard for her federal statutory rights.

143.    As a result of Defendant's unlawful retaliation, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT IX – RETALIATION
## PHILADELPHIA FAIR PRACTICES ORDINANCE

144.    Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

145.    Plaintiff made internal complaints regarding race and/or gender discrimination and participated in an investigation into complaints of race discrimination.

146.    Defendant took adverse employment actions against Plaintiff, including, but not limited to, disparate pay.

147. There exists a causal connection between Plaintiff's complaints of race and/or gender discrimination and her participation in an investigation into complaints of race discrimination and the adverse employment action.

148. Defendant refused to address Plaintiff's disparate pay as a result of her complaints.

149. Defendant's acts and/or omissions were willful or with reckless disregard for her federal statutory rights.

150. As a result of Defendant's unlawful retaliation, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

### COUNT X – DISPARATE PAY
### EQUAL PAY ACT

151. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

152. The Equal Pay Act of 1963, prohibits employers from discriminating between employees on the basis of sex by paying wages to employees at a rate less than the rate at which it pays wages to employees of the opposite sex for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.

153. At all relevant times, Defendant was an "employer" under the Equal Pay Act.

154. At all relevant times, Plaintiff was an "employee" under the Equal Pay Act.

155. Plaintiff, a female, was employed by Defendant and performed work requiring equal skill, effort, and responsibility as that performed by her male comparators employed by Defendant in the same or substantially similar position(s).

156. Plaintiff and her male comparators performed their respective work under similar working conditions and employment circumstances.

157. Despite performing substantially equal work under similar working conditions, Defendant compensated Plaintiff at a rate materially lower than the rate paid to her male comparators.

158. The differential in compensation paid to Plaintiff as compared to her male comparators is not attributable to any seniority system, merit system, system which measures earnings by quantity or quality of production, or any factor other than sex.

159. Defendant knew or showed reckless disregard for the fact that its compensation practices violated the Equal Pay Act.

160. As a result of Defendant's willful violations of the Equal Pay Act, Plaintiff has suffered economic damages lost wages and other compensation.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Maribel Gonzalez-Graham, requests that the Court grant her the following relief against Defendant:

(a) Damages for past and future monetary losses as a result of Defendant unlawful discrimination;

(b) Compensatory damages;

(c) Punitive damages;

(d) Emotional pain and suffering;

(e) Reasonable attorneys' fees;

(f)     Recoverable costs;

(g)     Pre and post judgment interest;

(h)     An allowance to compensate for negative tax consequences;

(i)     A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with them, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of Title VII, the PHRA, the PFPO and the EPA.

(j)     Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for her adverse actions; and

(k)     Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time any other action or arbitration proceeding contemplated.

RESPECTFULLY SUBMITTED,

**KOLLER LAW LLC**

19

Date: April 13, 2026

By:    */s/ David M. Koller*
       David M. Koller, Esquire
       Jordan D. Santo, Esquire
       2043 Locust Street, Suite 1B
       Philadelphia, PA 19103
       T: (215)-545-8917
       F: (215)-575-0826
       davidk@kollerlawfirm.com
       jordans@kollerlawfirm.com

       *Counsel for Plaintiff*